UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN GLASBY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCY HOUSING, INC., et al.,<br><br>Defendants. | Case No. 17-cv-02153-DMR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 12 |

Defendants Mercy Housing, Inc., Mercy Housing California, Inc., and Mercy Housing Management Group, Inc. ("Defendants") move the court to dismiss a claim for relief under the Unruh Act brought by Plaintiffs Calvin Glasby, Sydney Skochko, and Virginia Dorsey ("Plaintiffs"). Motion to Dismiss ("MTD") [Docket No. 12]. Plaintiffs oppose. [Docket No. 16]. The court held a hearing on September 14, 2017. Having considered the parties' submissions as well as oral argument, and for the reasons stated below, Defendants' motion to dismiss is **GRANTED** with leave to amend. Plaintiffs may file a First Amended Complaint within 14 days of the date of this order.

**I.  BACKGROUND**

Plaintiffs make the following allegations in their complaint, all of which are taken as true for purposes of this motion.[1] Plaintiffs are persons with disabilities and low-income tenants who reside at the Hamilton Apartments in Oakland, California. Compl. ¶ 1. Each plaintiff has a mobility disability and requires the use of a wheelchair or walker to ambulate. *Id*. ¶¶ 6-7. None of them can climb or descend stairs. Compl. ¶ 15. Defendants own and operate the Hamilton Apartments, which they advertise as "special needs housing." Compl. ¶¶ 1, 9. The Hamilton

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Apartments is a seven-story apartment building that is served by one stair lift into the building and one elevator from the lobby into the apartment units. *Id*. ¶ 15.

Plaintiffs allege that Defendants have failed to maintain paths of travel into the building that are accessible to disabled persons such as Plaintiffs. *Id*. ¶ 16. Specifically, Defendants have permitted the lift and elevator to fall into such disrepair that they are repeatedly taken out of service, and have also delayed restoring service to the lift and elevator. *Id*. ¶¶ 18-19. According to Plaintiffs, the lift and elevator have been out of service for several days and up to six weeks at a time. *Id*. ¶¶ 19, 35, 36, 40, 43, 46, 49, 50, 52. As a result, Plaintiffs have suffered personal and emotional injuries, embarrassment, and discomfort in their attempts to negotiate the stairs, and/or have been forced to remain in their apartments, or have been temporarily excluded from their apartments. *Id*. ¶¶ 19, 35, 36, 40, 43, 46, 49, 50, 52. For example, Plaintiff Glasby was trapped in his unit for approximate one month and missed at least four doctor's appointments due to the elevator being out of service. *Id*. ¶ 35. For absolutely critical medical appointments, Glasby required the assistance of other people to lift him up and down the stairs, a process which was extremely painful and stressful. *Id*. ¶ 36.

Plaintiffs further allege that when the lift and elevator are out of service, Defendants have failed to "modify policies and procedures to accommodate disabled residents' special needs." *Id*. ¶ 20. Specifically, Defendants have not provided advance notice of when the elevator will be out of service, nor have they informed residents about how long the elevator is expected to be out of service. *Id.* Defendants have also failed to grant reasonable accommodations for the duration of service interruptions, such as providing alternative housing. *Id.* They have also failed to inform residents that reasonable accommodations are available. *Id.*

Plaintiffs have made several requests for reasonable accommodations during elevator service outages. *See, e.g.,* Compl. ¶¶ 39, 44, 47. Defendants have either delayed in responding to these requests or refused to grant certain accommodations. *See, e.g., id*. ¶¶ 20, 35, 39, 44, 47. For example, during a six-week service outage in 2015 and 2016, Plaintiff Skochko requested a hotel accommodation. Compl. ¶ 44. Defendants did not respond to her request until three and a half weeks later, by which time Skochko had already paid for the hotel. Compl. ¶ 44. In February

2

1  2017, Defendants also denied Skochko's request for a per diem stipend of $25.00 for meals and
2  for reimbursement for the food that spoiled in her refrigerator during the three weeks that the lift
3  was out of service. *Id.* ¶ 47.

4  According to Plaintiffs, where Defendants have granted requests for reasonable
5  accommodations, they have subjected Plaintiffs to unreasonable conditions, delayed
6  reimbursements to Plaintiffs, or, in certain instances, have not reimbursed Plaintiffs at all. *See,*
7  *e.g., id.* ¶¶ 20, 37, 39, 44-46. For example, Defendants still have not reimbursed Glasby for his
8  hotel costs in 2016 when the elevator was out. *Id.* ¶ 37.

9  On April 18, 2017, Plaintiffs filed a complaint which alleges violations of: (1) the Fair
10  Housing Act, 42 U.S.C. § 3601 *et seq.*; (2) the California Fair Employment and Housing Act, Cal.
11  Gov't Code § 12926 *et seq.*; (3) section 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794;
12  (4) the California Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*; and (5) the Unruh Civil
13  Rights Act ("the Unruh Act"), Cal. Civ. Code § 51(b) *et seq.*

14  Defendants now move to dismiss the Unruh Act claim.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.,* 349 F.3d 1191, 1199–200 (9th Cir. 2003). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted).

When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A claim has facial plausibility when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. DISCUSSION

### A. The Unruh Act

The Unruh Act protects against discrimination by California business establishments:

> (b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation, are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.
>
> . . .
>
> (f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

Cal. Civ. Code §§ 51(b), (f).

"In passing the Unruh Act, the California Legislature intended to provide broad protection against arbitrary discrimination." *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1049 (N.D. Cal. 2012) (citing *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 795 (1983)); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 666 (2009) (the Unruh Act "serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices.") (citation and internal quotation marks omitted). Accordingly, the Unruh Act "'must be construed liberally in order to carry out its purpose' to 'create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments.'" *Munson*, 46 Cal. 4th at 666 (quoting *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007)).

In 1992, the California Legislature amended the Unruh Act to add subdivision (f), which specifies that a violation of the ADA is also a violation of the Unruh Act. Cal. Civ. Code § 51(f). The purpose of the 1992 amendment was to "not only . . . prohibit ADA violations under section 51, but when such violations occur to provide a damages remedy under section 52."[2] *Munson*, 46

---

[2] The damages provision of the Unruh Act provides, in relevant part, that "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees

4

Cal. 4th at 670, 673 (explaining that the ADA permits a disabled individual who is denied access to public accommodations to recover damages in a government enforcement action only; section 51(f) amendment provides a private right of action for damages for persons injured by a violation of the ADA).

To state a claim for disability discrimination under section 51(b), a plaintiff must allege facts showing that: "(1) [the plaintiff] was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [the plaintiff's] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Wilkins-Jones*, 859 F. Supp. 2d at 1048 (citation and internal quotation marks omitted). In order to establish a section 51(b) claim, the plaintiff "must 'plead and prove intentional discrimination in public accommodations in violation of the terms of [the Unruh Act].'" *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Munson*, 46 Cal. 4th at 690); *see also Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005) (explaining that the language of Civil Code section 51 "impl[ies] willful, affirmative misconduct on the part of those who violate" the Unruh Act).

To state a claim under section 51(f), a plaintiff must allege facts establishing an ADA violation. *See* Cal. Civ. Code § 51(f). However, unlike a section 51(b) claim, a plaintiff need not plead intentional discrimination. *See Munson*, 46 Cal. 4th at 670 (concluding that "a plaintiff proceeding under section 51, subdivision (f) may obtain statutory damages on proof of an ADA access violation without the need to demonstrate additionally that the discrimination was intentional"); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) (holding that "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation" because the Unruh Act adopted the ADA in full, and accordingly, "the same standards for liability apply under both Acts") (citation and internal

---

that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Cal. Civ. Code § 52(a).

5

quotation marks omitted).

**B. Analysis**

Defendants move to dismiss the Unruh Act claim on two grounds. First, they argue that Unruh Act claims can only be brought against residential landlords for discriminatory leasing or selling practices, and not for the discriminatory operation or maintenance of residential housing. Second, Defendants argue that Plaintiffs' Unruh Act claim for failure to provide reasonable accommodation amounts to an alleged violation of the ADA. As such, Defendants contend that the claim must be dismissed because the ADA does not apply to residential apartment complexes such as the Hamilton Apartments.

The court discusses each argument in turn.

**1. The Unruh Act Applies to Claims Arising out of the Operation of Rental Properties.**

Defendants argue that the Unruh Act only applies to claims against residential landlords for discriminatory leasing or selling practices, and not to the kind of claims brought by Plaintiffs here, which allege discrimination in the operation and maintenance of residential housing. This supposed limitation finds no support in the law.

Defendants ground their argument in *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721 (1982). They assert that the Unruh Act only applies to claims arising out of discriminatory rental practices because the California Supreme Court in *Marina Point* held that the Unruh Act applies to the "business of renting housing accommodations." *Marina Point, Ltd.*, 30 Cal. 3d at 731. This is incorrect. In *Marina Point*, the California Supreme Court held that the defendant apartment complex qualified as a "business establishment" under the Unruh Act, and that its discriminatory policy of refusing to rent units to families with children violated the statute. *Id*. at 731, 744-45. Nothing in *Marina Point* suggests that the court intended to limit the application of the Unruh Act to discriminatory rental practices; the court was merely addressing the circumstances presented in that particular case. In fact, in reaching its decision, *Marina Point* highlighted the breadth of the Unruh Act's reach, stating that "[a]lthough the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that

the Legislature intended to prohibit *all arbitrary discrimination by business establishments.*" 30 Cal. 3d at 732 (citation omitted; emphasis in original).

Moreover, Defendants' cramped interpretation of the Unruh Act is contrary to the plain language and purpose of the statute. The statute broadly prohibits discrimination in the "accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). As an anti-discrimination statute, the Unruh Act must be construed liberally to effectuate this purpose. *Munson*, 46 Cal. 4th at 666 (citation and internal quotation marks omitted). To interpret the Unruh Act as Defendants propose by restricting it to discriminatory rental practices would lead to the nonsensical result of prohibiting disability discrimination in the leasing and selling of rental units, but permitting it in the operation and maintenance of those same units.

Indeed, numerous courts in this circuit have held that restricting or prohibiting a tenant's access to facilities and services in an apartment complex violates the Unruh Act. *See, e.g., Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1170 (C.D. Cal. 2012) (apartment complex's policies requiring adult supervision of children at all times violated the Unruh Act); *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1060 (E.D. Cal. 1998) (apartment complex's rule restricting children's access to pools violated the Unruh Act); *Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 977 (N.D. Cal. 2013) (failure to provide plaintiffs with language translation accommodations and to remedy the inhabitable conditions of plaintiffs' rental unit stated a claim for intentional discrimination on the basis of plaintiffs' national origin and violated the Unruh Act).

Accordingly, the court finds that the Unruh Act applies to discrimination claims arising out of the operation and maintenance of rental housing.

### 2. The Unruh Act Does Not Necessarily Prohibit Claims for "Reasonable Accommodations" in Residential Housing Complexes

Defendants next argue that Plaintiffs cannot bring an Unruh Act claim for failure to provide reasonable accommodations, because such a claim amounts to an alleged ADA violation, and ADA violations only apply to public accommodations, which do not include residential apartment complexes as a matter of law. This argument is not persuasive.

Defendants are correct that the ADA only applies to public accommodations, which include hotels and motels, but not residential apartment complexes. *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."); 42 U.S.C. § 12181(7)(A) (definition of "public accommodation" includes "an inn, hotel, motel, or other place of lodging"). "Public accommodation" does not include residential apartment complexes. *Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) ("[T]he legislative history of the ADA clarifies that "other place of lodging" does not include residential facilities.") (citing H.R.Rep. No. 101–485(II), 101st Cong., 2d Sess. 383 (1990), U.S. Code Cong. & Admin.News 1990, p. 267); *Arceneaux v. Marin Hous. Auth.*, No. 15-CV-00088-MEJ, 2015 WL 3396673, at *7 (N.D. Cal. May 26, 2015) ("[A]partment complexes do not constitute 'public accommodations' within the meaning of the ADA.") (citing cases).

However, Defendants err in assuming that Plaintiffs bring their Unruh Act claim under section 51(f), which provides a private right of action for damages for violations of the ADA. Plaintiffs clearly do not do so. In fact, the complaint expressly states that "Plaintiffs do not claim a violation of the Americans with Disabilities Act (ADA) as incorporated into Unruh, Civil Code section 51(f). They claim a violation of Civil Code section 51(b), independently of the ADA under State law." Compl. ¶ 90.

Defendants are also incorrect to the extent they imply that an Unruh Act claim for failure to provide reasonable accommodation must, by nature, fall under section 51(f) and not section 51(b). First of all, such a characterization paints with too broad a brush. Defendants focus on the label "reasonable accommodation" without defining the types of claims that are encompassed by their label. For example, Defendants do not distinguish claims challenging the failure to provide accessible facilities such as serviceable elevators and lifts, from claims addressing the failure to pay for reasonable housing alternatives when the elevator and lift are out of service. In any event, Defendants do not cite any case that stands for the proposition that a "reasonable accommodation"

8

claim, regardless of its specifics, can only be pursued under section 51(f).

In fact, the opposite is true. Several courts in this circuit have recognized that section 51(b) can encompass a claim for intentional discrimination in the form of a failure to provide reasonable accommodation to a person with a disability. For example, in *Gutierrez v. Gonzalez*, No. 2:17-cv-01906-CAS(Ex), 2017 WL 1520419, at *6 (C.D. Cal. Apr. 26, 2017), the district court found that the plaintiff-tenant sufficiently pleaded a section 51(b) claim based on allegations that "defendants actively retaliated against him because of his disability" when they served the plaintiff with a 30-day notice to vacate in response to the plaintiff's request for a companion animal as an accommodation for his disability. *Id*. The district court explained that "[s]uch conduct constitute[d] 'willful, affirmative misconduct' on the basis of plaintiff's protective status." *Id*. (quoting *Greater Los Angeles Agency on Deafness, Inc*., 742 F.3d at 425).

Similarly, in *Wilkins-Jones*, the plaintiff was a pre-trial criminal detainee with mobility issues. She sued the private prison in which she jailed, alleging that she was denied full and equal access to accommodations, facilities, and services in violation of the Unruh Act. 859 F. Supp. 2d at 1051. Specifically, the plaintiff pleaded facts showing that as a result of the defendants' actions, she had difficulties accessing the jail's facilities, such as beds, toilets, showers, walkways, and benches. *Id*. The court found that the plaintiff alleged a denial of full and equal accommodations, facilities or services as required by section 51(b). *Id.* at 1050. However, the court ultimately dismissed the section 51(b) claim because the plaintiff could not plead sufficient facts to establish an inference of intentional discrimination on the facts of that case. *Id*. at 1051-53.

Similarly, in *Earll v. eBay, Inc*., No. 5:11-cv-00262-JR (HRL), 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011), the plaintiff, an individual with a hearing impairment, brought a putative class action alleging that eBay's verification system was inaccessible to the deaf community. 2011 WL 3955485, at *1. The plaintiff moved to amend to add an Unruh Act claim. *Id*. eBay opposed, arguing that the amendment was futile because the plaintiff's claim was derivative of her ADA claim, which was not actionable because eBay was not a place of public accommodation under the ADA. *Id*. at *2. The district court held that eBay was correct if the plaintiff premised her Unruh

9

Act claim on an ADA violation, but explained that the plaintiff may be able to plead an Unruh Act claim independent of an ADA violation pursuant to section 51(b), which requires a showing of intentional discrimination. *Id*. The court found that the plaintiff had not sufficiently pleaded a plausible claim of intentional discrimination in her case, because although she alleged multiple instances where eBay representatives suggested that she "enlist the help of a hearing person," she also alleged that that eBay representatives informed her that she could verify her identify through alternative means. *Id*. at *3. These allegations, according to the district court, did not "reasonably imply that eBay was unwilling or unable to remedy the situation," and thus did not "necessarily amount to an intentional denial of access to a public accommodation." *Id*. at *4.

The cases on which Defendants rely do not advance their argument. At best, these cases stand for the undisputed proposition that a plaintiff who specifically premises an Unruh Act claim on an ADA violation (i.e., a plaintiff who brings a section 51(f) claim) can only bring such a claim against places of public accommodation.

For example, in *Coronado v. v. Cobblestone Village Community Rentals,* 163 Cal. App. 4th 831 (2008), overruled on other grounds by *Munson*, 46 Cal. 4th at 678, the plaintiff-tenant was a wheelchair-bound quadriplegic. He sued the defendant apartment complex, alleging "that the existence of the particular structural barrier (i.e., lack of a curb ramp) on the pathway outside the apartment denied his right to full and equal access to public accommodation." 163 Cal. App. 4th at 840. In support of his Unruh Act claim, the plaintiff alleged that the defendants violated Section 51 because certain statutes which required the defendants to install the wheelchair ramp as a modification. *Id*. at 841. The California Court of Appeal held that the plaintiff could not establish an Unruh Act claim, but only because each specific statute applied only to places of public accommodation, and not to residential apartment complexes. *See id*. at 845-51 ("[A] plaintiff seeking to establish a cause of action under the Unruh Civil Rights Act or the Disabled Persons Act based solely on the existence of a structural barrier must be able to show that the failure to remove the barrier constituted a violation of a structural access standard set forth in other provisions of law. In the instant case, none of the statutes that were referred to by plaintiff as the source of such structural access standards was applicable to the residential and common areas of

the apartment complex."). Notably, the California Court of Appeal in *Coronado* did not, as Defendants suggest, hold as a general matter that a plaintiff may never plead an Unruh Act claim for reasonable accommodations against a residential landlord. It simply concluded that the specific statutes on which the plaintiff relied did not permit structural access claims against a residential housing unit.

Similarly, in *Holland v. Related Companies, Inc.*, No. 15-CV-03220-JSW, 2016 WL 3669999, at *1 (N.D. Cal. July 11, 2016), the plaintiff-tenant filed a lawsuit against his apartment complex, alleging that the defendant violated the Unruh Act by failing to provide a reasonable accommodation for construction noise which impacted the plaintiff's Post-Traumatic Stress Disorder. *Id*. Relying on *Coronado,* the defendant moved for summary judgment on the Unruh Act claim, arguing that the statute does not apply to requests for reasonable accommodations in residential apartment complexes. *Id*. at *4. In response, the plaintiffs argued that the Unruh Act should be construed broadly to incorporate a "reasonable accommodation claim." The plaintiffs relied on *Flowers v. Prasad*, 238 Cal. App. 4th 930 (2015), which is a Section 51(f) case, as well as portions of the Unruh Act's legislative history discussing the incorporation of the ADA in Section 51(f). *Id*. at *5. Unsurprisingly, the court granted summary judgment, explaining: "[B]ecause [the] [p]laintiffs sought a reasonable accommodation in connection with areas that are indisputably within the residential portions of [the apartment complex], they cannot show a violation the ADA and, thus, cannot premise their Unruh Act [claim] on that alleged violation." *Id*. *Holland* does not provide guidance here, for unlike the current case, *Holland* dealt with a section 51(f) claim, rather than a claim pursued under section 51(b).

The same can be said of the two other cases relied upon by Defendants. In both *Rodriguez* and *Smith*, the court analyzed the plaintiff's Unruh Act claims as section 51(f) claims premised on an ADA violation, which the plaintiffs in those cases did not appear to dispute. *See Rodriguez v. Morgan*, No. 09-cv-8939-GW (CWx), 2012 WL 253867, at *1-*3 (C.D. Cal. Jan. 26, 2012) (granting summary judgment on Unruh Act claim alleging defendant failed to provide reasonable accommodations by refusing to let plaintiff to break her lease; concluding that Unruh Act "does not require a landlord to engage in reasonable accommodation of a disabled tenant as to residential

11

housing"); *Smith v. Powdrill*, No. 12-cv-06388 DDP (RZx), 2013 WL 5786586, at *11 (C.D. Cal. Oct. 28, 2013) (granting summary judgment on Unruh Act claim alleging defendant failed to provide reasonable accommodations by refusing to make an exception to the no-pets policy in a residential lease for a service animal).

In sum, Defendants are incorrect in asserting that a section 51(b) claim for "reasonable accommodation" cannot be sustained against a residential housing facility such as the Hamilton Apartments as a matter of law. The question then becomes whether Plaintiffs have adequately pleaded their section 51(b) claim here. They have not.

Plaintiffs allege that Defendants violated section 51(b) because the Hamilton Apartments is a "business establishment" covered under Section 51(b), and Defendants failed and refused to (a) "modify [their] policies and procedures as necessary to ensure Plaintiffs full and equal access to the accommodations, advantages, facilities, privileges, or services;" (b) "construct and/or alter the building's facilities in compliance with state building and state housing requirements;" (c) "maintain [the building's] accessible features, including, but not limited to their elevators in conformity" with California Building Code; (d) "provide an accessible means of egress from their tenants apartments" in violation of California Building Code; and (e) "provide an accessible entrance and accessible route to and through all apartments" in violation of the California Building Code. Compl. ¶ 89(a)-(e). Plaintiffs further allege, on information and belief, that Defendants' behavior was intentional in that they acted with deliberate indifference to the fact that Plaintiffs are disabled, citing *Green v. San Diego Unified Sch. Dist.*, 226 F. App'x 677, 679 (9th Cir. 2007). *Id.* ¶ 91.

To allege an Unruh Act claim "separate from an ADA claim," the plaintiff "must allege intentional discrimination." *Wilkins-Jones*, 859 F. Supp. 2d at 1051. In *Greater Los Angeles Agency on Deafness, Inc.*, the Ninth Circuit explained that intentional discrimination under the Unruh Act "contemplates [a showing of] 'willful, affirmative misconduct on the part of those who violate the Act'"; accordingly, a "'plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy.'" *Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 425 (quoting *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853 (2005)).

12

Plaintiffs' complaint specifically cites to *Green* for the proposition that reckless indifference qualifies as intentional discrimination under section 51(b). In so doing, Plaintiffs fail to acknowledge that the Ninth Circuit has expressly rejected *Green*:

> Equally unconvincing is GLAAD's misguided effort to import the "deliberate indifference" standard into the Unruh Act context. Seizing upon a lone parenthetical in *Green v. San Diego Unified School District*, 226 Fed.Appx. 677 (9th Cir.2007), one of our unpublished, nonprecedential dispositions, and other inapposite cases, GLAAD urges that "intentional discrimination under the Unruh Act consists of knowledge that a protected right is substantially likely to be infringed upon, and a failure to act upon that knowledge—'deliberate indifference.'" We decline to adopt the deliberate indifference standard in light of the California Supreme Court's statement that a showing of intentional discrimination under the Unruh Act contemplates "willful, affirmative misconduct." *Koebke*, 31 Cal.Rptr.3d 565, 115 P.3d at 1228 (emphasis added) (internal quotation marks omitted).

*Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 427.

Plaintiffs' allegations expressly rely upon the rejected *Green* standard, and are therefore plainly insufficient as a matter of law. While it is unclear how Plaintiffs will allege intentional discrimination under the circumstances of this case, the court cannot say that amendment would be futile, and therefore grants Plaintiffs leave to amend. *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005) (unless it is "clear beyond doubt that amendment of [a] complaint would be futile," a court should permit a party to amend its complaint). The court does not reach the question of whether Plaintiffs' section 51(b) claim as currently pleaded is deficient in other ways.

## IV. CONCLUSION

In conclusion, the court grants Defendants' motion with leave to amend. Plaintiffs shall file their First Amended Complaint within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: October 25, 2017



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge

13